1

2

3
**E-Filed 7/20/07**

4

5

6

7

8
NOT FOR CITATION

9
**IN THE UNITED STATES DISTRICT COURT**

10
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11
**SAN JOSE DIVISION**

12

13
PATRICIA FAGUNDES,                          Case Number C 07-1111 JF (HRL)

14
              Plaintiff,                     ORDER[1] GRANTING MOTIONS TO
                                             DISMISS WITH LEAVE TO AMEND
15
       v.
                                             [re: docket nos. 6, 38]
16
CHARTER BUILDERS, INC. et al.,

17
              Defendants.

18
HELLER-MANUS
                        Cross-Claimant,
19
       v.
20
CHARTER BUILDERS, INC., et. al.
21
                        Cross-Defendants
22

23
                    **I. BACKGROUND**

24
       Plaintiff Patricia Fagundes filed the complaint in this action on February 23, 2007.  The

25
action arises from the alleged failure of Defendants Charter Builders, Inc. ("Charter"), Carrasco

26
& Associates, Inc. ("Carrasco"), Heller-Manus, Inc. ("Heller"), Armax Corp. ("Armax"), and

27
_____

28
       [1] This disposition is not designated for publication and may not be cited.

Domizile Homeowners Association ("DHA") to construct her residence in a way that accommodates her disability.  DHA is a homeowners' association whose "membership is composed of the owners of condominium units" at her condominium complex, which is called Domizile Condominium Complex ("Domizile").  Complaint ¶ 17.  Charter is "the general contractor for Domizile and a direct participant in the design and construction process."  *Id.* at ¶ 14.  Carrasco is the "architectural firm responsible for the design of dwellings and common use areas and facilities at Domizile."  *Id.* at ¶ 15.  Heller is the architectural firm "responsible for the design of dwellings and common use areas and facilities at Domizile."  *Id.*  Armax is "the developer of Domizile and a direct participant in the design and construction process."  *Id.* at ¶ 16.  Plaintiff asserts claims for violation of: (1) the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*; (2) the California Fair Employment and Housing Act, Cal. Gov't. Code § 12927, *et seq.*; (3) negligent supervision; and (4) negligence.  On April 23, 2007, Heller filed a cross-claim against Charter, Armax, and Domizile (collectively "Cross-Claim Defendants").  Heller alleges that it is entitled to indemnification by the Cross-Defendants for any liability to Plaintiff.

Plaintiff's complaint contains the following allegations: Plaintiff is a sixty-six year old woman who suffers from disabilities.  Complaint ¶ 4.  Plaintiff purchased a unit in Domizile in early 1996.  *Id.* at ¶ 5.  In or around 2001 or 2002, Plaintiff began to use a scooter to attend medical appointments, to shop, and to travel to her volunteer work.  *Id*.  When Plaintiff began using a scooter, she started to have difficulty using the front gate and the door to her building.  *Id*.  Plaintiff could not use the front gate because she did not have sufficient time to use the required entry fob, grasp and pull open the gate, and enter through it.  *Id*.  Moreover, her front door requires twenty-one pounds of force to open, and Plaintiff did not have sufficient time to open the door and maneuver her scooter through it while it remained unlocked.  *Id*.  In order to avoid these difficulties, Plaintiff began using the entrance to her garage to enter her home.  *Id.* at ¶¶ 5-6.  On July 29, 2002, while Plaintiff was entering her home through her garage entrance, "the garage door closed upon her back and shoulders while she was on her scooter, pinning her under it.  As she struggled to move from under the door, the door continued to close upon her back, injuring her back and shoulders."  *Id.* at ¶ 6.  Plaintiff notified Bob Scisillano, a member of the DHA

1   Board of Directors, and Property Manager Nagi Chami about the injuries and the difficulties she

2   had entering her home. *Id.* After the incident, Plaintiff began to use the front gate again, and in

3   consequence sprained her thumb on or about August 2002. *Id.*

4        Plaintiff further alleges the following: on August 21, 2002, Plaintiff contacted the

5   Midpeninsula Citizens for Fair Housing ("MCFH") to complain about the facilities at Domizile.

6   *Id.* at ¶ 6. MCFH conducted an investigation on October 1, 2002 and October 11, 2002, and

7   informed Plaintiff that the design of the building might violate the Fair Housing Act. In 2003[2]

8   Plaintiff filed a complaint with the United States Department of Housing & Urban Development

9   ("HUD"). *Id.* at ¶ 7. HUD conducted an investigation and found the following violations of the

10   Fair Housing Accessability Guidelines: "(a) lack of an accessible building entrance on an

11   accessible route; (b) lack of accessible and usable common use areas; (c) lack of usable passage

12   doors throughout the units; and, (d) lack of usable kitchens and bathrooms." *Id.* at ¶ 7.

13        On April 27, 2007, DHA moved to dismiss the complaint for failure to state a claim upon

14   which relief can be granted. It argues that it is under no duty to perform corrective work or

15   retrofitting at Domizile because it did not construct or design the buildings. It also argues that

16   the complaint is barred by the statute of limitations. On June 7, 2007, Charter also moved to

17   dismiss the complaint, arguing that it is time-barred. Plaintiff opposes both motions. On May

18   11, 2007, DHA moved to dismiss Heller's cross-claim on the basis that Plaintiff cannot prevail

19   on the underlying claims. Heller opposes that motion.

20        On July 9, 2007, Plaintiff voluntarily dismissed Carrasco[3] and Armax, leaving Charter,

21   Heller, and DHA as the remaining defendants. On July 13, 2007, the Court heard oral argument

22

23      [2] The parties dispute the date upon which this HUD complaint was filed. Plaintiff asserts

24   that she filed the complaint on July 25, 2003. However, Charter submits a true copy of the
complaint, which is stamped as filed on September 16, 2003. Under *Lee v. City of Los Angeles*,

25   250 F.3d 668, 688-89 (9th Cir. 2001), the Court may take judicial notice of public documents.
At oral argument, the Court informed Plaintiff that it would consider any documentary evidence

26   that she could provide demonstrating that her complaint was filed before September 16, 2003.
However, Plaintiff gave no indication that she could provide such evidence.

27

28      [3] Carrasco moved to dismiss the complaint on May 21, 2007. In light of the voluntary
dismissal, Carrasco's motion is not considered here.

1    on the three motions to dismiss.

2    **II. LEGAL STANDARD**

3    For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the

4    Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v.*

5    *McKeithen*, 395 U.S. 411, 421 (1969).  On a motion to dismiss, the Court's review is limited to

6    the face of the complaint and matters judicially noticeable. *North Star International v. Arizona*

7    *Corporation Commission*, 720 F.2d 578, 581 (9th Cir. 1983); *MGIC Indemnity Corp. v.*

8    *Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395 (C.D.

9    Cal. 1995). Leave to amend must be granted unless it is clear that the complaint's deficiencies

10   cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir.

11   1995).  When amendment would be futile, however, dismissal may be ordered with prejudice.

12   *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).  Factual allegations must be enough to raise the

13   right to relief above the speculative level on the assumption that all of the complaint's allegations

14   are true. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

15   **III. DISCUSSION**

16   **1.      FHA Claim**

17   The FHA defines as violations against individuals with disabilities:

18   (A) a refusal to permit, at the expense of the handicapped person, reasonable
     modifications of existing premises occupied or to be occupied by such person if
19   such modifications may be necessary to afford such person full enjoyment of the
     premises except that, in the case of a rental, the landlord may where it is
20   reasonable to do so condition permission for a modification on the renter agreeing
     to restore the interior of the premises to the condition that existed before the
21   modification, reasonable wear and tear excepted.
     (B) a refusal to make reasonable accommodations in rules, policies, practices, or
22   services, when such accommodations may be necessary to afford such person
     equal opportunity to use and enjoy a dwelling;"
23   (C) in connection with the design and construction of covered multifamily
     dwellings for first occupancy after the date that is 30 months after September 13,
24   1988, a failure to design and construct those dwellings in such a manner that –
              (i) the public use and common use portions of such dwellings are readily
25   accessible to and usable by handicapped persons;
              (ii) all the doors designed to allow passage into and within all premises
26   within such dwellings are sufficiently wide to allow passage by
     handicapped persons in wheelchairs; and
27            (iii) all premises within such dwellings contain the following features of
     adaptive design:
28                    (I) an accessible route into and through the dwelling;

4

1

2

3

4

> (II) light switches, electrical outlets, thermostats, and other
> environmental controls in accessible locations;
> (III) reinforcements in bathroom walls to allow later installation
> of grab bars; and
> (IV) usable kitchens and bathrooms such that an individual in a
> wheelchair can maneuver about the space.

5   42 U.S.C. § 3604(f)(3)(A)-(C).  As currently pled, Plaintiff's FHA claim alleges discrimination

6   by improper construction under 28 U.S.C. § 3604(f)(3)(C), not failure to allow modifications or

7   to provide reasonable accommodations in rules or policies under 28 U.S.C. § 3604(f)(3)(A)-(B).

8       Defendants assert that a claim under 28 U.S.C. § 3604(f)(3)(C) is barred by the statute of

9   limitations.   The relevant statute provides in relevant part as follows:

10

11

12

> (A) An aggrieved person may commence a civil action in an appropriate United
> States district court or State court not later than 2 years after the occurrence or the
> termination of an alleged discriminatory housing practice, or the breach of a
> conciliation agreement entered into under this subchapter, whichever occurs last,
> to obtain appropriate relief with respect to such discriminatory housing practice or
> breach.

13

14

15

> (B) The computation of such 2-year period shall not include any time during
> which an administrative proceeding under this subchapter was pending with
> respect to a complaint or charge under this subchapter based upon such
> discriminatory housing practice. This subparagraph does not apply to actions
> arising from a breach of a conciliation agreement.

16   42 U.S.C. § 3613(1)(A)-(B) (2007).  It is undisputed that Plaintiff failed to file her complaint

17   within two years of the condominium's completion.  However, Plaintiff argues that the statutory

18   period did not begin to run until Plaintiff was harmed, a date that Plaintiff argues coincides with

19   her physical injury.  Plaintiff also argues that the application of the continuing harm doctrine

20   renders her claim timely.  For the reasons discussed below, the Court concludes that Plaintiff's

21   argument lacks merit.

22       According to her complaint, Plaintiff suffered a physical injury on July 29, 2002.

23   Fourteen months passed before she filed her HUD complaint on September 16, 2003.[4]  Another

24   year passed between the resolution of her HUD complaint on February 23, 2006, and the filing of

25   the complaint in the instant action on February 23, 2007.  Excluding the time that her complaint

26

---

27

28

[4] As discussed above, Plaintiff claims that she contacted HUD at an earlier time, but she has provided no evidence of such meeting.  Nor has she cited any authority that would permit the Court to disregard the official filing date of the HUD complaint in the absence of such evidence.

Case No. C 07-01111 JF (HRL)
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND
(JFEX2)

1   was pending with HUD, the time between her injury and the filing of the instant case exceeds the

2   limitations period by approximately two months.  Accordingly, the claim is time-barred to the

3   extent that it is based on an asserted injury that occurred on July 29, 2002.

4        However, the Court also must consider Plaintiff's argument that she has suffered

5   continuing harm as a result of the alleged defective construction.  The Supreme Court has held as

6   a general proposition that the FHA is subject to the continuing harm doctrine.  *Havens Realty*

7   *Corp. v. Coleman*, 455 U.S. 363, 380 (1982).  In *Havens*, defendants committed a continuing

8   practice of unlawful racial steering upon many different individuals.  The Supreme Court decided

9   that the asserted harms were not isolated incidents, but instead a series of continuing violations,

10  with at least one violation inside the statute of limitations.  *Id.* at 380-81.  However, neither the

11  Supreme Court nor the Ninth Circuit has decided whether the continuing harm doctrine applies in

12  the construction context; in other words, whether a claim for the construction of an inaccessible

13  building ever can be barred by the statute of limitations.  As discussed below, district courts have

14  disagreed on this issue.

15       The court in *Eastern Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Assoc.*, 133

16  F.Supp. 2d 203, 212-13 (E.D.N.Y. 2001), concluded that the defendant's refusal to make a

17  complex accessible to those with disabilities by providing wheelchair ramps constituted a

18  continuing violation.  The *Eastern* court stated that a continuing violation "may be found where

19  there is proof of specific ongoing discriminatory policies or practices, or where specific and

20  related instances of discrimination are permitted . . . to continue unremedied for so long as to

21  amount to a discriminatory policy or practice." *Id.* at 212.  In *Montana Fair Hous., Inc. v.*

22  *American Capital Dev., Inc.*, 81 F.Supp. 2d 1057, 1063 (D. Mont. 1999), the court held that the

23  reference in 42 U.S.C. § 3613(a)(1)(A) to the date, "two years after the occurrence or the

24  termination . . . whichever occurs last," confirmed the application of the continuing violations

25  doctrine.[5]

26

27

----

28      [5] However even this case states that a continuing violation requires at least one act of
        harm to be within the statute of limitations.  81 F.Supp.2d at 1063.

Case No. C 07-01111 JF (HRL)
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND
(JFEX2)

1   In contrast, in *Moseke v. Miller and Smith, Inc.*, 202 F.Supp.2d 492, 508-09 (E.D. Va.

2   2002), the court concluded that the continuing violations provision does not apply in the

3   construction context if the harm alleged is the ongoing effect of a violation that occurred outside

4   the statute of limitations.  The *Moseke* court stated that *Havens* dealt with continuing *acts* by

5   defendants violating the FHA rather than the *effects of one violation* that occurred outside the

6   limitations period.  *Id.* at 507.  The *Moseke* court reasoned that "if the mere existence of a FHA

7   non-compliant building is a continuing violation under the FHA then there is no limitations

8   period on a disability discrimination claim involving design and construction. . . . [I]t strains

9   statutory construction of the FHA to unreasonable limits to read 'continuing' into the very

10  existence of a completed FHA non-compliant building."  *Id.* at 508.  In *United States v. Taigen &*

11  *Sons, Inc.*, 303 F.Supp.2d 1129, 1140-41 (D. Idaho 2003), the court also rejected the analysis of

12  *Eastern Paralyzed*, distinguishing between the continuing effects of a previous violation and a

13  continuing violation.  That court noted that *Moseke* distinguished *Havens* because it recognized

14  that "the Supreme Court has consistently held that a continuing violation was not present where

15  there was a subsequent effect resulting from the defendant's prior discriminatory act . . . The

16  critical question is whether any present violation exists."  *Id.* at 1141.

17      This Court concludes that the continuing harm doctrine does not apply in the construction

18  context, at least under the circumstances presented here.  In the instant case, Plaintiff alleges that

19  Defendants violated the FHA by failing to construct the condominiums in a manner that rendered

20  them accessible to disabled people.  By definition, the alleged harm was completed at the time of

21  construction or sale, and certainly no later than the date of Plaintiff's physical injury.  Plaintiff

22  may continue to feel the effects of this harm, but that alone does not render it a continuing

23  violation within the meaning of *Havens*.  The mere existence of a non-compliant structure is not

24  an ongoing act of discrimination.  As the statute itself provides, the appropriate legal theory is

25  failure to accommodate a request for modification.  42 U.S.C. § 3604(f)(3)(A).

26      There is no indication that Congress intended to impose indefinite FHA liability upon

27  builders.  Rather, discriminatory construction is an injury that occurs when the actual act of

28  construction has been completed.  The Court concludes that Plaintiff's FHA claim is time-barred

7

1    to the extent that it is based upon allegations of discriminatory construction.

2        In opposition to the instant motion, Plaintiff appears to suggest that Defendants also

3    failed to allow modifications at Plaintiff's expense and refused to make accommodations in their

4    rules or regulations.  Accordingly, leave to amend will be granted to allow Plaintiff assert claims

5    under 42 U.S.C. § 3604(f)(3)(A)-(B).

6    **2.      Motions to Dismiss the State Law Claims**

7        Defendants assert correctly that the statute of limitations for each of Plaintiff's state law

8    claims is two years.  *See* Charter Motion 9 (citing Cal. Civ. Proc. Code § 335.1 (two year statute

9    of limitations for certain torts), Cal. Gov't Code § 12989.1 (two-year statute of limitations under

10   FEHA)).   Plaintiff argues that the limitations period began at the time of her injury of July 29,

11   2002.  As discussed above, even assuming that the limitations period was tolled while Plaintiff's

12   HUD compliant was pending, any claims subject to a two-year statute of limitations are barred.

13   Accordingly, Plaintiff's claims under state law will be dismissed.  In light of its decision to grant

14   leave to amend the FHA claim, the Court also will grant leave to amend the state law claims.

15   However, leave to amend is granted only to the extent that Plaintiff can allege claims that are not

16   time-barred.[6]

17

18

19

20

21

22

23

24

25

26   _____

27       [6] As the Court has dismissed each of Plaintiff's claims, the motion to dismiss Heller's
     cross-claim presently is unripe.  Such motion may be renewed if Plaintiff amends her complaint.

28

8

1

**IV. ORDER**

Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is GRANTED, with leave to amend.  An amended complaint may be filed within thirty days of this order.

DATED: July 20, 2007.

_____
JEREMY FOGEL
United States District Judge

Case No. C 07-01111 JF (HRL)
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND
(JFEX2)

1  This Order has been served upon the following persons:

2  Juan Carlos Araneda: jaraneda@longlevit.com, mhigginbotham@longlevit.com,
3  tkershaw@longlevit.com

4  Kevin Charles Canty: kcanty@angius-terry.com, cgomez@angius-terry.com

5  D. Scott Chang: schang@relmanlaw.com, chobbs@relmanlaw.com, egrigera@relmanlaw.com,
   mhahn@relmanlaw.com, wmiller@relmanlaw.com

6  J. Michael Higginbotham: mhigginbotham@longlevit.com, tkershaw@longlevit.com

7  Mark C. Russell: mrussell@gordonrees.com, apapina@gordonrees.com

8  Andrew M. Wolfe: awolfe@ropers.com, djackson@ropers.com, mmcpherson@ropers.com

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

10